STATE of Iowa, Appellee,

v.

Armando PEREZ a/k/a Garardo Luiz Ruiz, Antonio Silva, Armando Ruiz, Armando Luis Sanchez, and Armando Valdez, Appellant.

No. 96–521.

Supreme Court of Iowa.

May 21, 1997.

Linda Del Gallo, State Appellate Defender, and Sarah E. Hennesy and David Arthur Adams, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Jill R. Pitsenbarger, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

Following a bench trial, the district court found Armando Perez guilty of willful injury in violation of Iowa Code section 708.4 (1995) and assault while participating in a felony causing serious injury, in violation of Iowa Code section 708.3. The court sentenced Perez to two consecutive ten-year terms. Perez appeals, arguing that the term imposed for the conviction of assault while participating in a felony constitutes cumulative punishment violating the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Iowa Code section 701.9. Finding no merit in these contentions, we affirm.

The following facts, found by the district court, are not seriously contested on appeal. Perez attended a backyard party of acquaintances in Sioux City the afternoon of July 30, 1995. Beer drinking went on all afternoon. An argument between Perez and one of the hosts elevated to a fight that included shoving and hitting. The host produced a .357 revolver, pointed it at Perez, and then fired at the ground near Perez's feet. Perez and a friend left the party in Perez's station wagon. As they drove away, another man threw a beer bottle at the back of the station wagon, breaking the window.

Perez and his companion drove to a motel where they met another friend who offered Perez a 9-millimeter handgun with hollow point ammunition. At around 10 p.m., Perez returned to the party armed with the handgun.

The record is somewhat inconclusive concerning the next round of events. Perez claimed that when he returned, he fired his gun at the front of the house. From an upstairs window, Lorena Beltran told him the party was over. In fact, the party continued in the backyard. Lorena came out of the house to join Perez in the car, but as they drove away she asked him to return for her purse which she had forgotten. When they came back, some of the party participants had moved to the front yard. Perez, now armed, admitted that he shot at the ground. He then claimed that as he drove away, two others shot at him from the side of the house. He maintains that Lorena's cousin, Jose Manuel Beltran, was shot in the crossfire.

The district court found Perez's recollection of the events not credible. The court found that as Perez, Lorena, and their friend were driving away, Jose Beltran approached Perez's car. Neighbors testified that Perez and Beltran were speaking in loud voices; the neighbors then heard shots fired and saw Beltran back away from the vehicle and fall to the ground. Perez immediately left the scene in the station wagon. He was later arrested at a local tavern. The gun was found in the station wagon's glove box.

Seventeen-year-old Beltran died from a bullet wound to his head. The State then filed a five-count trial information charging Perez with first-degree murder, willful injury, terrorism, going armed with intent, and assault while participating in a felony causing serious injury.

Based on the facts sketched above, the district court drew several legal conclusions. On Count I, first-degree murder, the court found no malice aforethought and, thus, entered a guilty verdict on the lesser-included offense of willful injury. The court's verdict on Count I rendered Count II, willful injury, moot. The court found Perez not guilty of terrorism because of insufficient proof that an assembly of people were placed in fear of injury. As for the charge of going armed with intent, the court found Perez not guilty based on lack of proof that he was armed with specific intent to shoot Jose Beltran. Finally, as to Count V, the court found Perez guilty of assault while participating in the forcible felony of willful injury, resulting in serious injury, in violation of Iowa Code section 708.3.

Pertinent to this appeal, Perez filed a motion for new trial in which he claimed the court erred in finding him guilty of both willful injury and assault while participating in a felony. He renewed the argument at sentencing, urging his rights under the Double Jeopardy Clause would be violated if the

court imposed consecutive sentences for what Perez characterizes as the same offense. The district court rejected Perez's contentions and ordered the sentences to run consecutively. This appeal by Perez followed.

■ I. Because Perez challenges the court's judgment on constitutional grounds, our review is de novo. *State v. Finnel*, 515 N.W.2d 41, 43 (Iowa 1994). To the extent Perez claims on appeal that his sentence was illegal because the court failed to merge the two offenses in accordance with Iowa Code section 701.9, our review is at law.[1] *Id.*

II. The Double Jeopardy Clause commands that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This constitutional protection is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969); *Dressler v. Iowa Dep't of Transp.*, 542 N.W.2d 563, 565 (Iowa 1996). The Clause offers three guarantees. It protects against successive prosecutions after acquittal or conviction; and, pertinent to this appeal, it protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969); *Dressler*, 542 N.W.2d at 565; *State v. Taft*, 506 N.W.2d 757, 760 (Iowa 1993).

■ Where multiple punishments are imposed pursuant to a single prosecution, however, application of the Double Jeopardy Clause is limited. The reason is that the multiple punishment proscription "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983). Thus we said in *State v. McKettrick*, 480 N.W.2d 52, 57 (Iowa 1992), "the question of what punishments are constitutionally permissible is no different from the question of what punishments the legislature intended to be imposed."

■ The question before us is whether Perez, found to have committed the single act of shooting Jose Beltran, can be sentenced for convictions of willful injury *and* assault while participating in a felony causing serious injury. *See* Iowa Code §§ 708.4,[2] 708.3.[3] *Hunter* instructs that "[w]here ... a legislature specifically authorizes cumulative punishment under two statutes ... the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d at 544. In other words, legislatures are not constrained by the Double Jeopardy Clause from defining crimes and fixing punishments. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 193–94 (1977). The Double Jeopardy Clause operates as a check on the courts, for "once the legislature has acted courts may not impose more than one punishment for the same offense." *Id.* The rationale for this legislative deference was recently explained this way:

> [The] government [has] broad control over the number of punishments that may be meted out for a single act, [which] is consistent with the general rule that the government may punish as it chooses, within the bounds contained in the Eighth and Fourteenth Amendments. With respect to punishment, those provisions provide the primary protection against excess. "Be-

---

1. Iowa Code § 701.9 states:
   No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If [the court] returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.
   Although Perez did not challenge the legality of his sentence under section 701.9 at trial, that does not prevent him from raising the issue on appeal. *See State v. Halliburton*, 539 N.W.2d 339, 343 (Iowa 1995).

2. The crime of willful injury is defined as follows: "Any person who does an act which is not justified and which is intended to cause and does cause serious injury to another commits a class 'C' felony." Iowa Code § 708.4.

3. Section 708.3 pertinently provides that "[a]ny person who commits an assault ... while participating in a felony other than sexual abuse is guilty of a class 'C' felony if the person thereby causes serious injury to another person...."

cause the substantive power to prescribe crimes and determine punishment is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."

*United States v. Dixon*, 509 U.S. 688, 746, 113 S.Ct. 2849, 2882, 125 L.Ed.2d 556, 600 (1993) (Souter, J., concurring) (quoting *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425, 433 (1984)).

Courts are obliged to indulge the presumption that "in the absence of a clear indication of contrary legislative intent" the legislature ordinarily does not intend cumulative punishment. *Hunter*, 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d at 542 (quoting *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715, 724 (1980)). Thus where a double jeopardy violation is alleged to arise from a single prosecution, our analysis begins with an examination of legislative intent. That intent may generally be gleaned from the face of the statute. "If the statutory language is plain and the meaning is clear, we do not search for the legislative intent beyond the express terms of the statute." *Horsman v. Wahl*, 551 N.W.2d 619, 620–21 (Iowa 1996). If the Code sections are unambiguous, we need not resort to principles of statutory construction. *Id.* at 621.

Only in the absence of clear legislative intent do we turn to the rule of statutory construction articulated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See McKettrick*, 480 N.W.2d at 58 ("[*Blockburger* ] rule should not be controlling where, for example, there is a

clear indication of contrary legislative intent") (quoting *Hunter*, 459 U.S. at 367, 103 S.Ct. at 679, 74 L.Ed.2d at 543).[4] *Blockburger*, of course, sets forth the "same-elements" test as a means of determining legislative intent. The test is applied by juxtaposing the two crimes to determine from their elements whether each offense "requires proof of an additional fact the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309; *State v. Aguiar–Corona*, 508 N.W.2d 698, 701 (Iowa 1993).

Both Perez and the State have focused their appellate arguments on application of the *Blockburger* same-elements test. Under the rule laid out in *Hunter*, however, we are convinced the controversy can be determined from the plain language of section 708.3 without resorting to statutory construction. *See Ohio v. Johnson*, 467 U.S. 493, 499 n. 8, 104 S.Ct. 2536, 2541 n. 8, 81 L.Ed.2d 425, 433 n. 8 (1984) ("Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end.").

Iowa Code section 708.3 manifests the intent of the legislature to punish as a class "C" felony an assault committed while the assailant participates in a felony causing serious injury to another. On its face, the provision contemplates punishment for two offenses—the assault resulting in injury *as well as* the predicate felony. Here both crimes are classified as "C" felonies. *See* Iowa Code §§ 708.3, 708.4. If, as Perez argues, merger is required, then the express legislative will to punish two separate class

---

**4.** This court has on occasion inverted this analysis. In *State v. Gallup*, 500 N.W.2d 437, 441–42 (Iowa 1993), for example, we first applied the same-elements test to determine whether one of the offenses was a lesser-included offense of the other. After doing so, we stated: "But the analysis does not end here." *Gallup*, 500 N.W.2d at 442. We *then* considered *Hunter*, stating "the question we must now answer is whether the legislature intended that a person convicted under [two statutes should] be punished for each offense." *Id.* at 443; *see also Halliburton*, 539 N.W.2d at 344; *State v. Lewis*, 514 N.W.2d 63, 69 (Iowa 1994). It appears this approach can be streamlined, as evidenced by the passage *Gallup* quotes from *Hunter:*

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, *regardless of whether those two statutes proscribe the "same" conduct under Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial. *Gallup*, 500 N.W.2d at 443 (quoting *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d at 544). If, as *Hunter* suggests, manifest legislative intent effectively preempts any need to apply the *Blockburger* rule of statutory construction, it appears courts need not routinely engage in the "same-elements" analysis.

"C" felonies could not be fulfilled. *See Halliburton*, 539 N.W.2d at 344.

Perez correctly observes that the "elevating" felony (assault while participating in a felony) and the predicate felony (willful injury) are both assaults. But the language of section 708.3 exempts only one type of assault—sexual abuse—from its scope. Failure by the legislature to include an exception for any other assault reveals a deliberate limitation on the exemption. *State v. Ray*, 516 N.W.2d 863, 867 (Iowa 1994); *State ex rel. Miller v. Santa Rosa Sales & Mktg., Inc.*, 475 N.W.2d 210, 218 (Iowa 1991). Nor do sections 708.3 and 708.4 contain language negating prosecution and punishment for each of the crimes. *Cf. McKettrick*, 480 N.W.2d at 58 (statute's plain language prevents conviction, in single assault, for assault *with* intent and assault *without* intent to commit serious injury); Iowa Code § 708.2(3) (expressly limiting penalty for assault with dangerous weapon in prosecution for section 708.6, terrorism, or section 708.8, going armed with intent).

In summary, Perez suffered no violation of his rights under the Double Jeopardy Clause when the court entered judgment and sentence on his convictions for violation of both sections 708.3 and 708.4 in connection with the death of Jose Beltran. Our resolution of Perez's constitutional claim renders section 701.9 inapplicable. *See Halliburton*, 539 N.W.2d at 344 (if Double Jeopardy Clause not violated because legislature intended double punishment, section 701.9 not applicable and merger not required).

**AFFIRMED.**